UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| RANDY HAROLD WRIGHT and | ) | |
| MAE ALISE WRIGHT | ) | |
| | ) | |
| v. | ) | NO. 2:07-CV-166 |
| | ) | |
| BRAD DEPEW, *ET AL.* | ) | |

## MEMORANDUM OPINION AND ORDER

This Title 42 United States Code section 1983[1] matter is before the Court

on three separation motions for summary judgment: (1) Defendant Hawkins County

Tennessee's Motion for Summary Judgment, [Doc. 42]; (2) Defendant Brad Depew's

Motion for Summary Judgment, [Doc. 45]; and (3) Defendant Scott A. Stewart's

Motion for Summary Judgment, [Doc. 48]. This Court will address each motion in

turn after briefly addressing the facts and the standard of review.

## I.   FACTUAL BACKGROUND[2]

---

[1]The Complaint also cites section 1981, but there are no allegations of discrimination to support such a claim. Therefore, a § 1981 claim is not before this Court.

[2]These facts are gleaned from the defendants' Statements of Undisputed Material Facts and other exhibits in the record. The defendants noted that to the extent the facts are in dispute, they included the plaintiff's version of events. At times, this Court has set forth the plaintiff's version. At other times, this Court has pointed out the disputes. In so doing, however, this Court is well aware of the standard that requires the Court to view the facts in the light most favorable to the nonmoving party.

On July 21, 2006, at around 6:00 p.m., the plaintiff, Randy Harold Wright ("plaintiff" or "Wright"), was driving his pick-up truck on Highway 11W when a container of Catawba worms opened releasing the worms into the cab of the truck. Approximately 45 to 50 worms began crawling on the steering wheel and on the plaintiff's arms, shirt, hair, and pants. The plaintiff slowed his truck and attempted to put the worms back into the container while still driving. In so doing, the plaintiff drove off the road onto the warning strips three or four times. Detective Brad Depew ("Depew") was off duty and driving behind the plaintiff. Depew was with his family, for they were leaving for vacation. According to Depew, the plaintiff was driving erratically, and Depew thought the plaintiff's driving might be a result of him being under the influence of drugs or alcohol. The plaintiff denies that he was under the influence of alcohol or drugs and there is no evidence in the record to support that he was.

As a result of Depew's observations and opinions, he telephoned the Hawkins County Sheriff's Department central dispatcher and requested that an on-duty officer be dispatched to the scene. He also informed dispatch of the license plate number. Deputy Scott Stewart ("Stewart") was dispatched to the scene. Meanwhile, Depew continued to follow the plaintiff, and he further observed what he characterized as the plaintiff hitting someone or something in the seat of the truck.

Stewart and Depew spoke by cellular telephone, and Depew told Stewart of his observations.  The dispatcher also informed Stewart that the license plate did not match the vehicle.

Prior to Stewart intercepting the plaintiff's vehicle, the plaintiff stopped at D&R Market.  Depew also stopped at the market, approached the plaintiff's vehicle and identified himself as on off-duty officer.  Depew was in plain clothes and was unarmed.  Then Stewart arrived.  Depew asked the plaintiff if there were any weapons in the vehicle, and the plaintiff told him no.  Stewart asked the plaintiff for his registration, and when the plaintiff opened the glove compartment of the truck, Depew saw a pistol in the compartment and abruptly notified Stewart of the gun's presence. The plaintiff contends he placed his hands down and made no hostile movements.

Stewart drew his weapon and ordered the plaintiff to exit the vehicle. Stewart apparently used profanity when giving this order.  At the same time, Depew grabbed the plaintiff's arm to prevent him from reaching for the weapon.  According to Stewart's affidavit, he reholstered his weapon and grabbed the plaintiff's other arm. The plaintiff was pulled out of the vehicle and "slammed" up against the side of his truck.[3]  When this occurred, the plaintiff's cellular telephone, which was in his pocket

---

[3]This statement was contained in Stewart and Depew's Undisputed Statement of Material Facts.  As stated in an earlier footnote, the defendants noted that to the extent the facts are disputed, they used the plaintiff's version.  The defendants actually dispute that the plaintiff was "slammed" up against the truck several times.

and was also attached to an ear piece, fell out of this pocket.  According to the plaintiff, he informed the officers that he was going to reach for the telephone.  When he reached, he was "slammed" up against the truck, and his telephone fell into the bed of the truck.  The plaintiff again reached for the telephone, and he was "slammed" into the truck once more.  At some point when the plaintiff was "slammed" into the truck for the third time, he was hit, he thinks from an elbow, under the left eye.  However, he did not notice this injury until he was at the jail sometime later.  The plaintiff further admits that Stewart kept instructing him to leave his telephone alone, but that he kept reaching for the telephone because he had just paid $100 for it and did not want to lose it.[4]

The record is somewhat unclear as to the precise moment that Stewart placed handcuffs on the plaintiff.  What is clear from plaintiff's version of events is that he was handcuffed after he reached for his telephone in the bed of the truck.  Nonetheless, Stewart handcuffed the plaintiff, and the plaintiff, who was wearing two knee braces at the time, stood on the concrete for a short length of time before being placed inside of Stewart's cruiser.  The record is also unclear as to whether a gun or

---

[4]The defendants state in their replies that if there was evidence in the record that the plaintiff was repeatedly slammed into the truck despite following commands and without resisting in any way, then there would be a genuine issue of material fact for trial.

guns were pointed at the plaintiff during the time he was being handcuffed.[5]

The plaintiff remained in the cruiser for 35 to 45 minutes before Stewart drove him to the Hawkins County Jail. It is disputed whether the cruiser was running at the time. The plaintiff banged his head on the window to get Stewart's attention. He asked Stewart for some air, and Stewart cracked the window.[6]

Stewart then drove the plaintiff to the Hawkins County Jail at high rates of speed up to 89 miles per hour. The plaintiff experienced pain in his wrists when they drove around curves, but according to the plaintiff, it was "no big deal." He never asked Stewart to slow down or to loosen the handcuffs. Once at the jail, the plaintiff denied that he needed any immediate medical treatment, and he did not receive medical treatment for physical injuries at the jail or after release relating to this incident. The plaintiff has, however, seen a doctor as a result of emotional injuries alleged to have been received. As a result of the incident, the plaintiff was convicted of reckless driving, unlawful possession of a firearm, and violation of the registration

---

[5]The plaintiff claims that the last time he was slammed against the truck he had a gun pointed "to [his] head" and "one in [his] back." Stewart claims that he had reholstered his weapon. The record also reflects that at some point Depew removed the plaintiff's gun from the glove compartment and removed the bullets. It does not state when this occurred. Furthermore, it is unclear if another officer(s) at the scene had pulled a weapon. Nonetheless, for the purposes of ruling on summary judgment, this Court will accept the plaintiff's version.

[6] This is another statement which is actually disputed. Stewart stated in his affidavit that he did not recall the plaintiff complaining about the temperature in the car or cracking the window for him.

laws.

II.  **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute.  *Id.* at 322.  A  mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000).  This Court's role is limited to determining whether the case contains sufficient

evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

III.   **DISCUSSION**

Defendants Depew and Stewart argue that they are entitled to qualified immunity. This determination requires the Court to decide whether the officer's conduct violated a constitutional right of the plaintiff and if so, whether the constitutional right was clearly established at that time. *See Saucier v. Katz*, 533 U.S. 194 (2001). These defendants first deny that they violated the plaintiff's constitutional rights because they claim they did not use excessive force either before, during or after his arrest.[7] They then argue that even if there is a genuine issue of fact as to whether they violated his constitutional rights, then they are still entitled to qualified immunity because the conduct is not clearly prohibited by prior case law.

The County argues that in order to recover against it, the plaintiff must first establish that a constitutional violation occurred. *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001). The County claims that neither Depew nor Stewart violated the plaintiff's constitutional rights. Thus, the inquiry as to the County's liability ends. If, however, this Court determines that a constitutional violation occurred, then the plaintiff must prove that the injury he suffered "was a direct result of the [municipality's] official policy or custom." *Slusher v. Carson*, 540 F.3d 449,

---

[7]The defendants note in a footnote of their memoranda in support of their motions for summary judgment that it is unclear whether the plaintiff claims that his constitutional rights were violated because of merely being arrested. If so, they claim that such a claim would be barred pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). It does not appear to the Court that plaintiff has made such a claim. Even if such claim were made, the defendants are correct that it would be barred pursuant to *Heck*.

456-57 (6th Cir. 2008). The County contends that the plaintiff cannot meet this requirement. The Court will discuss each issue in turn.

## A. Qualified Immunity - Defendants In Their Individual Capacities

The defendants submit that they are entitled to qualified immunity from the plaintiff's claims.

> In determining an officer's entitlement to qualified immunity [this Court] follow[s] a two-step inquiry.[8] *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First taken in the light most favorable to the plaintiff, [the Court] decide[s] whether the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201. If no constitutional right would have been violated were the plaintiff's allegations established, there is no need for further inquiry into immunity. If a violation can be made out on a favorable view of the plaintiff's submissions, [the Court] next ask[s] whether the right was clearly established. *Id.*

*Vakilian v. Shaw*, 335 F. 3d 509, 516-17 (6th Cir. 2003). In general, government officials performing discretionary functions, are shielded "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[A]ll but the plainly incompetent or those who knowingly violate the law" are

---

[8] The Supreme Court recently held that the *Saucier* approach is no longer mandatory, and the district courts can elect to decide the second issue without determining whether a constitutional violation actually occurred. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). This Court will use the two-step approach of *Saucier*.

protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The relevant question for the Court regarding whether the right was clearly established is not the subjective intent of the defendant, but whether a reasonable officer would have believed the defendant's conduct to be lawful, in light of the clearly established law and information possessed by the defendant. *Anderson*, 43 U.S. at 640.

### 1. Whether The Defendants Used Excessive Force ?

As stated earlier, the plaintiff claims that the defendants violated his constitutional rights by using excessive force. More specifically, the plaintiff asserts the following uses of excessive force in his briefs: "1) bringing Mr. Wright out of the vehicle at gunpoint 2) cursing at Mr. Wright and threatening to blow his brains out 3) slamming Mr. Wright's body against his vehicle at least three times 4) handling him roughly 5) elbowing Mr. Wright below the eye 6) placing a gun to the back of Mr. Wright's head and back while handcuffing 7) forcing an obviously disabled man to stand on concrete 8) placing Mr. Wright in an unventilated vehicle for 35-45 minutes in hot weather."[9] [Doc. 58, p. 8].

A citizen's claim that law enforcement officials used excessive force in making a seizure is reviewed under the Fourth Amendment's "objective

_____

[9]This Court notes that allegations of the use of profanity, the pointing of guns, the elbowing in the eye, and the standing on the concrete were not specifically mentioned in the Complaint.

reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To determine whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment, this Court must balance the "individual interest in being free from unreasonable seizures" against the "important government interest in protecting the safety of its peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396). This Court must, thus, afford careful attention to the facts and circumstances of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. However, the ultimate question is "whether the totality of the circumstances justifie[d]" the use of force. *Johnson v. City of Lincoln Park*, 434 F.Supp.2d 467, 479 (E.D. Mich. 2006). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Thus, the Court must take into account the fact that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97. In addition, the extent of a plaintiff's injury, though not crucial, is also considered in adjudicating

excessive force claims."  *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001).

This Court will address each alleged excessive use of force in turn considering the above legal principles.  First, the plaintiff alleges that Depew and Stewart used excessive force in bringing him out of the vehicle at gunpoint.  The first *Graham* factor weighs in favor of the plaintiff.  Although reckless driving can result in serious injuries to the driver and to others, it is not considered one of the most serious crimes.  Further, the officers learned from the plaintiff that his driving was a result of having worms crawling over him and not due to being under the influence of drugs or alcohol.  There is nothing in the record to lead the court to believe that the officers suspected him being under the influence once the "worm-explanation" was given.

The second *Graham* factor weighs, however, heavily in favor of the defendants.  It is undisputed that Depew, in Stewart's presence, asked the plaintiff if he had any weapons in the vehicle, and he answered that he did not.  Whether the plaintiff just forgot about the firearm, as he now claims, or lied is of no consequence. The reasonableness of the officer's reaction would still be judged by the same standard.  The officers were told there was no gun, and there was.  In addition, the plaintiff was reaching for his registration in the glove compartment when Depew saw the gun.  Although the plaintiff claims that he immediately put his hands down, this

movement does not greatly affect the determination, in this context, that the officers acted reasonably. Officers are forced to make split second decisions for the protection of themselves, the suspect, and others around the scene. They were told there were no weapons, and there was a gun in the immediate reach of the plaintiff. Thus, the plaintiff posed an immediate threat.[10]

The third factor does not weigh in favor of the plaintiff or the defendants. At this point, the plaintiff was not actively resisting arrest or attempting to flee. After weighing all three factors, this Court concludes that the defendants did not use excessive force in removing the plaintiff from this truck at gunpoint, especially considering there was a gun in his immediate reach. *See Collins v. Nagle*, 892 F.2d 489, 496-97 (6th Cir. 1989) (holding that pointing a gun at an individual while another individual was in the process of being arrested was not excessive force). *But see Davis v. Bergeon*, No. 98-3812, 1999 WL 591448, at *5 (6th Cir. July 27, 1999) (holding there was an issue of fact whether officer, who had not identified herself as such, used excessive force in pointing a gun at a man, who was not suspected of wrongdoing and had not been observed having or being near a weapon).

Second, this Court must determine whether Stewart used excessive force

___

[10]  The plaintiff argues in his response to the motion for summary judgment that "he posed no threat." That was so, he argues, because he made no effort to reach for the firearm and told officers he had forgotten that the gun was in his vehicle. Officers are not required to view these events, however, with that kind of hindsight.

in cursing at the plaintiff and threatening to "blow his . . . brains out."  At this point in the progression of the events, the analysis of the *Graham* factors remains the same as stated above.  In addition, a plaintiff's "asserted fear from [threats], however, is not an actual infringement of a constitutional right, and thus, it is not actionable under section 1983."[11]  *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (citing *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir. 1985) (per curiam)).

Third, this Court must determine whether Depew and Stewart used excessive force in "slamming" the plaintiff against his truck three times in the process of attempting to handcuff him.  The analysis of the first two *Graham* factors remains the same as above except that due to other actions of the plaintiff the second factor is weighted even more heavily in the defendants' favor.  In addition, the plaintiff's actions cause the third factor to slightly weigh in the defendants' favor.

It is clear that the plaintiff was not trying to flee.  His actions cannot be described as actively resisting either.  Nonetheless, the plaintiff even admits that he did not completely follow the officers' instructions.  Once out of the truck, and in an attempt to neutralize the situation after seeing a gun which was not previously disclosed, the officers slammed the plaintiff against his truck.  This caused the

---

[11]This Court notes, however, that the use of such profanity by a law enforcement officer is extremely unprofessional.

plaintiff's telephone to fall out of his pocket.  According to the plaintiff's deposition, he informed the officers that he was going to reach for his telephone.  The plaintiff further testified at his deposition that Stewart told him not to reach for his phone.  He disobeyed the order and was slammed against the side of the truck again.  He reached for his phone once more and was again  slammed against the side of the truck.  In this process, the plaintiff was apparently elbowed under his eye.  After the third "slam," he was handcuffed.  The plaintiff also claims that while being handcuffed officers pointed a gun to his head and to his back.

Again, this factor slightly weighs in favor of the defendants because in the course or their arrest and while attempting to handcuff the plaintiff, the plaintiff was disobeying the officer's instructions by moving his hands in reaching for his telephone.  Thus, the officers apparently could not handcuff him because of his reaching.  In a situation where the plaintiff had just informed the officers that there was no weapon and then there turned out to be one, whether the plaintiff lied or just forgot, officers cannot be expected to not attempt to neutralize the situation.  Considering the totality of the circumstances, a reasonable officer could assume that the plaintiff was reaching for another undisclosed weapon and not a telephone.  Regardless of this assumption, the plaintiff did not follow the officer's instructions and made handcuffing him more difficult.  In addition, it does not appear from the

record that the plaintiff received a serious injury from the slamming. In light of all of these facts, this Court concludes that the officers did not use excessive force. *See Campbell v. Babaoglu*, No. 3:05-CV-360, 2007 WL 2491826, at *6 (E.D. Tenn. Aug. 29, 2007) (holding level of force was reasonable in response to plaintiff's repeated non-compliance to keep his hands out of his pockets); *see also Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (holding officers did not use excessive force in handcuffing plaintiff where plaintiff "acknowledged that he 'twisted and turned some' when they tried to handcuff him and that the officers had difficulty restraining him").

Fourth, this Court must decide whether the defendants used excessive force in "handling [the plaintiff] roughly." This allegation of excessive force by the plaintiff appears to be a restatement of his other allegations, with no additional facts alleged. The Court will not, therefore, address this conclusory allegation apart from the Court's consideration of the other more specific factual allegations.

The fifth allegation of excessive force is that the defendants were excessive in elbowing the plaintiff under the eye. The analysis of the three *Graham* factors are the same as set forth above in relation to the "slamming" incident. Further, the plaintiff did not know that this injury occurred until much later while he was at the jail. Moreover, the record is not clear as to which officer actually elbowed the plaintiff. There are conflicting comments about the injury in plaintiff's deposition.

Considering the totality of the circumstances, especially the presence of a weapon, the non-compliance with the officer's orders, and the minor injury, this Court cannot conclude that the officers used excessive force.

Sixth, the plaintiff complains that the officers used excessive force in placing a gun to the back of his head while he was being handcuffed. Again, the analysis of the *Graham* factors remains the same. The record is unclear as to which officers actually pointed a weapon. Nonetheless, pointing a gun at a non-compliant suspect during an attempt to arrest the person where a gun had just been found is not excessive force.

Seventh, the plaintiff complains that "forcing an obviously disabled man to stand on concrete" is excessive force. The record is unclear as to how long the plaintiff actually stood on the concrete, and the plaintiff actually did not mention this allegation in his complaint. As far as the three factors, none weigh in favor of the defendants. However, the ultimate question is "whether the totality of the circumstances justifie[d]" the use of force. *Johnson*, 434 F.Supp.2d at 479. Shortly after the plaintiff complained, he was immediately taken to the cruiser to sit down. The officers remedied the situation when the plaintiff complained. This is analogous to a suspect complaining of his handcuffs being too tight and an officer loosening them. In that situation, as in this one, there is no excessive force. *See Lyons*, 417 F.3d

at 575-76 (stating in order to reach a jury on such a claim, the plaintiff must allege some physical injury from the handcuffing and must show that the officers ignored complaints that the handcuffs were too tight).

Eighth, this Court must determine whether Stewart used excessive force in placing the plaintiff in his unventilated police cruiser for 35 to 45 minutes on a hot summer day at approximately 6:00 p.m. Again, the *Graham* factors do not weigh in favor of the defendants. Nonetheless, this Court must analyze the totality of the circumstances, and this Court must balance the "individual interest in being free from unreasonable seizures" against the "important government interest in protecting the safety of its peace officers and the public." *Williams*, 496 F.3d at 486 (citing *Graham*, 490 U.S. at 396). Here, the record showed that Stewart had the air conditioning on in the cruiser prior to the plaintiff's arrest because it was a hot summer day at approximately 6:00 p.m. Once the plaintiff complained that he could not stand on the concrete because of his knees, he was placed in the cruiser. He remained in the cruiser for 35 to 45 minutes. When he tapped on the window with his head and complained of the heat, Stewart cracked the window.

Initially, this Court notes that it was, of course, proper for Stewart to place the plaintiff, who had just been placed under lawful arrest, in the back of his cruiser. The question is whether exposing him to an unventilated car for 35 to 45

minutes was excessive force. The Sixth Circuit held in *Burchett* that "detaining [an individual] for three hours in ninety-degree heat with no ventilation violated his Fourth Amendment right against unreasonable seizures." 310 F.3d at 945. In that case, however, the officers refused to roll down the windows to allow him air. *Id*. The court stated that the officers "could have left the windows slightly open, for example, or utilized the car's cooling or ventilation devices." *Id*. Here, the plaintiff was left in the cruiser for a shorter period of time. More importantly, Stewart cracked the window at the plaintiff's request. Again, this is analogous to a situation where the plaintiff's handcuffs are placed on too tightly. The officer remedied the situation when the plaintiff complained, and according to the record, he made no more complaints to the officers about the heat after the window was cracked. After considering the totality of the circumstances, this Court does not find that Stewart used excessive force.

Regarding this same issue as to Depew, Depew could only be liable if this Court found Stewart violated the plaintiff's constitutional rights. This Court has held that plaintiff's rights were not violated. Thus, the analysis can end. Out of an abundance of caution, however, the Court will analyze the issue further. The plaintiff acknowledges that Depew did not place him in the cruiser. However, plaintiff seems to make the argument that Depew violated his rights because Depew was the ranking

officer and he was aware of the day's conditions.  According to *Turner v. Scott*, 119

F.3d 425, 429 (6th Cir. 1997),

> Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

*Id*.  It is undisputed that Depew thought Stewart's vehicle was running when  Stewart

placed the plaintiff inside.  More importantly, the record shows that Depew remained

at the scene only a few minutes after the plaintiff was placed in the car.  There is no

genuine issue of fact regarding this claim as to Depew.

Finally, the plaintiff alleged in the complaint that Stewart used excessive

force in transporting the plaintiff to the jail at high rates of speed while he was

handcuffed in the back.  However, he makes no arguments in his response regarding

the automobile trip to the jail.  Even assuming that the plaintiff has not abandoned this

argument, there is no genuine issue of material fact for trial.  It is true that in

*Kostrzewa v. City of Troy*, 247 F.3d 633, 640 (6th Cir. 2001), the court held, in the

Rule 12(b)(6) context, that "if the defendants drove recklessly with the plaintiff

handcuffed in the back seat so as to cause him further pain and injury, this, by itself,

is enough to state a claim upon which a reasonable factfinder could conclude that the

officers used excessive force." There is no evidence in the record that this was the case. The plaintiff himself stated that he experienced some pain in his wrists when they drove around curves, but according to him, it was "no big deal." He never asked Stewart to slow down or to loosen the handcuffs. Once at the jail, the plaintiff denied that he needed any immediate medical treatment. In order to reach a jury on such a claim, the plaintiff must allege some physical injury from the handcuffing and must show that the officers ignored complaints that the handcuffs were too tight. *Lyons*, 417 F.3d at 575-76. He made no such complaint. Thus, this Court finds that there was no excessive force on Stewart's part in this regard.

In sum, for the reasons set forth above, and considering the facts in the light most favorable to the plaintiff, this Court finds that neither Stewart nor Depew violated the plaintiff's constitutional rights.[12]

## 2. Whether The Law Is Clearly Established?

Because this Court has not found a constitutional violation, the Court

---

[12]This Court notes once again that the defendants actually dispute many of the events that the plaintiff alleges occurred. This Court is aware that "[s]ummary judgment is not appropriate in the qualified immunity context 'if there is a factual dispute . . . involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violated clearly established rights.'" *Vance v. Wade*, 546 F.3d 774, 787 (6th Cir. 2009) (Daughtry, J., concurring) (quoting *Buckner v. Kilgore*, 36 F.3d 536, 540 (6th Cir. 1994)). Here, for summary judgment purposes, the defendants also considered the plaintiff's version as "true" in their filings. Even considering the facts in the light most favorable to the plaintiff, there still is no genuine issue of material fact for trial.

need proceed no further into the inquiry. Nonetheless, this Court will briefly address whether the law is clearly established. In *Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004), the Supreme Court set forth two means by which a section 1983 plaintiff may show that a right was clearly established. A plaintiff may establish that a violation "was sufficiently obvious under the general standard of constitutional care that the plaintiff need not show a body of materially similar case law" or prove that an officer "fail[ed] to adhere to a particularized body of precedent that squarely governs the case." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (citing *Brosseau*, 543 U.S. at 199-200) (internal quotation marks and brackets omitted).

As for pointing a gun at the plaintiff while bringing him out of the vehicle and while handcuffing him, there is case law which indicates that this is not excessive force and thereby constitutional. *See Burchett*, 310 F.3d at 940, 944; *Collins*, 892 F.2d at 496-97. Thus, the plaintiff cannot show that the officers failed to adhere to precedent in this situation; they did just that. At the very least, *Burchett* and *Collins* appear to establish that the force employed by Stewart and Depew "fell in the hazy border between excessive and acceptable force." *Brosseau*, 543 U.S. at 199-200.

Regarding Stewart's cursing at the plaintiff and his threat, the plaintiff cannot show that Stewart failed to adhere to a particularized body of precedent. The

case law is clear that "asserted fear from spoken words . . . is not an actual infringement of a constitutional right." *Emmons*, 874 F.2d 353.

Next, the plaintiff has failed to show that Stewart and Depew failed to adhere to a particularized body of precedent regarding how he was handled when he was handcuffed. Actually, it was just the opposite. The case law cited above indicates that there was no constitutional violation and at the very least that the force used fell within the hazy border. *See Campbell v. Babaoglu*, No. 3:05-CV-360, 2007 WL 2491826, at *6 (E.D. Tenn. Aug. 29, 2007) (holding level of force was reasonable in response to plaintiff's repeated non-compliance to keep his hands out of his pockets); *see also Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (holding officers did not use excessive force in handcuffing plaintiff where plaintiff "acknowledged that he 'twisted and turned some' when they tried to handcuff him and that the officers had difficulty restraining him").

As for the plaintiff being "forced" to stand on the concrete, this Court has not found a prior case which squarely governs this issue. However, as stated earlier, this is analogous to a suspect complaining of his handcuffs being too tight and an officer loosening them. In that situation, as in this one, there is no excessive force. *See Lyons*, 417 F.3d at 575-76 (stating in order to reach a jury on such a claim, the plaintiff must allege some physical injury from the handcuffing and must show that

the officers ignored complaints that the handcuffs were too tight).  The prior case law need not be exactly analogous  for the officers to be on notice that their conduct would or would not be constitutional.  Here, the inference can be drawn from prior case law that their conduct was not, considering they immediately remedied the problem complained of.  At the very least, the conduct fell within the hazy border.

Regarding being placed in the unventilated car for 35 to 45 minutes, there is case law that speaks to this situation.  In *Burchett*, which is distinguishable in this regard to the current situation, Burchett was placed in a hot car for three hours and the officers refused to crack the windows.  The court stated that the officers in that case could have left the windows slightly open or used the car's cooling system.  This dicta and the facts which make the case distinguishable show that the officers did not use excessive force.  Therefore, the plaintiff cannot show that the defendants failed to adhere to a particularized body of precedent.  *See also Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

Finally, the plaintiff cannot show that Stewart did not adhere to a particularized body of precedent regarding his transport of plaintiff to the jail.  The *Kostrzewa* Court held, in the Rule 12(b)(6) context, that "if the defendants drove recklessly with the plaintiff handcuffed in the back seat so as to cause him further pain and injury, this, by itself, is enough to state a claim upon which a reasonable factfinder

could conclude that the officers used excessive force." Thus, Stewart would be on notice that if he drove recklessly "so as to cause [the plaintiff] further pain and injury," then the conduct could be viewed as excessive force. However, this case decided the issue in the 12(b)(6) context, and there is not evidence in the record of malice on Stewart's part or additional pain to the plaintiff worth causing the plaintiff to complain. He never asked Stewart to slow down or to loosen the handcuffs. Once at the jail, the plaintiff denied that he needed any immediate medical treatment. Further, Stewart was on notice that in order to reach a jury on such a claim, the plaintiff must allege some physical injury from the handcuffing and must show that the officers ignored complaints that the handcuffs were too tight. *Lyons*, 417 F.3d at 575-76. Again, the plaintiff made no such complaint. Thus, Stewart's conduct, when considering precedent in conjunction, at the least fell within the hazy border.

In sum, based on the prior case law at the time of the arrest and all reasonable inferences which can be drawn therefrom, the plaintiff has failed to show that Stewart and Depew failed to adhere to a particularized body of precedent that squarely governed the case. At the very least, their conduct fell within the hazy border between excessive and acceptable force. Thus, they are entitled to qualified immunity.

B.     **Hawkins County and Defendants in Their Official Capacities**

The County correctly argues that in order to recover against it, the plaintiff must first establish that a constitutional violation occurred. *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001). The County claims that neither Depew nor Stewart violated the plaintiff's constitutional rights. As stated above, this Court has found no constitutional violation. Thus, the inquiry as to the County's liability ends. Nevertheless, this Court will assume, *arguendo*, that a constitutional violation occurred and will briefly address whether the plaintiff's assumed injury "was a direct result of the [municipality's] official policy or custom." *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008).

To establish liability under § 1983, a plaintiff must demonstrate that (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) he was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1979)). Suits against defendants in their official capacities as county employees are essentially suits against the county. *See Fox v. Van Oosterum*, 176 F.3d 342, 347-48 (6th Cir. 1999) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978)); *see also Scott*, 205 F.3d at 879 n. 21. It is firmly established that a municipality, or in this case a county, cannot be held liable under § 1983 for an

injury inflicted solely by its employees or agents. *Monell*, 436 U.S. at 694. To prevail, the plaintiff must show that the alleged federal rights violation occurred because of a municipal policy or custom. *Id.*

In so doing, the plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003).

A plaintiff may look to four different avenues to prove the existence of a municipality's illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of in adequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Monell*, 436 U.S. at 694. Inadequate training may serve as the basis for liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Cherrington*, 344 F.3d at 646. In addition, to be actionable, the "training must be inadequate to the tasks that . . . officers must perform, this inadequacy must be the product of deliberate

indifference, and this inadequacy must have been closely related to or have actually caused the plaintiff's injury." *Id*.

Here the plaintiff claims that the County caused the alleged excessive force by its improper training, improper supervision, and failure to implement "meaningful procedures to discourage lawless official conduct." According to the record, Depew and Stewart were certified law enforcement officers, having all the require training to be certified as such. There was only one prior alleged incident of excessive force as to each officer of which the County was aware. Both allegations were dismissed. Moreover, the record shows that there is no evidence of a history of repeated complaints of unconstitutional conduct, much less complaints of such that were actually ignored by the County. Therefore, this Court finds that there is no basis for finding the County deliberately indifferent under the *City of Canton* standard.

## IV. CONCLUSION

For the reasons set forth above, Defendant Hawkins County Tennessee's Motion for Summary Judgment, [Doc. 42], Defendant Brad Depew's Motion for Summary Judgment, [Doc. 45], and Defendant Scott A. Stewart's Motion for Summary Judgment, [Doc. 48], are all **GRANTED**.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE